# EXHIBIT A

FILED DATE: 12/8/2023 3:51 PM   2023L012436

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| WALCO FUNDING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. |
| | ) |
| DRIVESMART AUTO CARE, INC., | ) |
| NATIONWIDE VEHICLE ASSURANCE CORP. | ) |
| D/B/A MOTOR VEHICLE ASSURANCE, and | ) |
| DANIEL J. RODD, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, WalCo Funding, LLC ("WalCo"), by and through its attorneys, Horwood Marcus & Berk Chartered, and for its Complaint against Defendants, Drivesmart Auto Care, Inc. ("Drivesmart"), Nationwide Vehicle Assurance Corp. d/b/a Motor Vehicle Assurance ("MVA"), and Daniel J. Rodd ("Rodd"), states as follows:

### NATURE OF ACTION

1.    This is a civil action seeking monetary relief for breach of contract and breach of guaranty.

### THE PARTIES

2.    WalCo is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

3.    Drivesmart is a New Jersey corporation with its principal place of business, on information and belief, located at 310 Main Street, Ste. 8, Toms River, New Jersey 08753.

4.    MVA is a New Jersey corporation with its principal place of business, on information and belief, located at 310 Main Street, Ste. 8, Toms River, New Jersey 08753.

FILED DATE: 12/8/2023 3:51 PM    2023L012436

5.    Rodd is an individual that resides, on information and belief, at 59 N. Island Road, Bayville, New Jersey 08721.

## JURISDICTION AND VENUE

6.    Jurisdiction over the parties and subject matter is proper pursuant to 735 ILCS 2-209(a)(7) because the causes of action arise from the Administrator Agreement, Marketer Agreement and Guaranty Agreement (as such terms are defined below), which are substantially connected to Illinois as the agreements were negotiated and executed in Illinois.

7.    Venue is proper in this Court, pursuant to 735 ILCS 5/2-101, because part of the facts which give rise to these causes of action arose or occurred in Cook County, Illinois.

8.    Additionally, this Court has jurisdiction over each Defendant and venue is proper in this Court for the independent reason that each Defendant irrevocably consented to this Court's jurisdiction pursuant to the terms of Section L.1 of the Administrator Agreement with Drivesmart, Section L.1 of the Marketer Agreement with MVA, and Section 21 of the Guaranty Agreement with Rodd.

## FACTS

9.    WalCo is a payment plan provider for, among other things, vehicle service contracts, which provide for the payment of benefits and reimbursement of costs for the repair or replacement of certain parts in vehicles owned or leased by third-party consumer purchasers of those vehicle service contracts ("Contracts"). WalCo maintains partnerships with administrators of the Contracts, such as Drivesmart, as well as direct marketers of the Contracts, such as MVA.

10.    MVA is in the business of marketing and selling Contracts to third-party consumers.

11.    Drivesmart is in the business of administering services and claims under the Contracts sold by marketers, such as MVA.

6931347/2/19686.011

FILED DATE: 12/8/2023 3:51 PM    2023L012436

'

12.    On January 16, 2021, WalCo and Drivesmart entered into an Administrator Agreement, which states the contractual relationship between WalCo and Drivesmart (the "Administrator Agreement"). A true and accurate copy of the Administrator Agreement is attached hereto as **Exhibit 1**.

13.    Pursuant to the Administrator Agreement, Drivesmart would receive a fee for each Contract sold to a third-party consumer by MVA in exchange for Drivesmart's agreement to administer the Contracts.

14.    On January 26, 2021, WalCo and MVA entered into a Marketer Agreement, which states the contractual relationship between WalCo and MVA. A true and accurate copy of the Marketer Agreement is attached hereto as **Exhibit 2**.

15.    Pursuant to the Section C of the Marketer Agreement, for each Contract sold to a third-party consumer by MVA and accepted by WalCo, WalCo, on behalf of the purchaser of each Contract, agreed to advance funds to MVA in the amount equal to the Advanced Amount (as that term is defined in the Marketer Agreement).

16.    Providing MVA with the Advanced Amount for each Contract allowed the third-party consumer purchasers to pay the purchase price of their respective Contract in installments, with MVA receiving the Advanced Amount up front.

17.    On January 26, 2021, concurrently with the execution of the Marketer Agreement, Rodd executed and delivered to WalCo a Guaranty Agreement (the "Guaranty Agreement"), wherein Rodd unconditionally and irrevocably guaranteed the payment of any and all amounts due under the Marketer Agreement. A true and accurate copy of the Guaranty Agreement is attached hereto as **Exhibit 3**.

6931347/2/19686.011

FILED DATE: 12/8/2023 3:51 PM   2023L012436

18.     Each third-party consumer purchaser of a Contract funded by WalCo has the right to cancel their Contract at any time without further obligation to Drivesmart, MVA or WalCo.

19.     Pursuant to Section D of the Marketer Agreement if a purchaser cancels their Contract the Marketer Refund (as that term is defined in the Marketer Agreement) becomes immediately due and owing to WalCo by MVA.

20.     Pursuant to Section C(6) of the Administrator Agreement, Drivesmart guaranteed the payment of Marketer Refunds due to WalCo.

21.     Following the execution of the Administrator Agreement and the Marketer Agreement, WalCo advanced funds to MVA for each Contract sold by MVA and accepted by WalCo and Drivesmart administered each of those Contracts.

22.     Thereafter, certain third-party consumer purchasers canceled the Contracts for which WalCo had advanced payments to MVA, triggering WalCo's right to obtain Marketer Refunds from MVA and Drivesmart.

23.     Despite MVA's agreement to pay Marketer Refunds pursuant to Section D of the Marketer Agreement, MVA failed to pay Marketer Refunds due to WalCo in breach of the Marketer Agreement (the "Marketer Agreement Breach").

24.     Pursuant to Section I(1) of the Marketer Agreement, and as a result of the Marketer Agreement Breach, MVA owes to WalCo an aggregate amount in excess of $1,462,851.24 for violating Section D of the Marketer Agreement.

25.     In addition, pursuant to Section I(2) of the Marketer Agreement, the amount owed to WalCo accrues a default rate of interest equal to 9.0% per annum, which interest shall be immediately due and payable (the "Marketer Default Interest").

FILED DATE: 12/8/2023 3:51 PM    2023I 012436

26.    Drivesmart failed to comply with its contractual agreement, pursuant to Section C(6) of the Administrator Agreement, to guarantee the payment of any and all Marketer Refunds should MVA fail to pay the Marketer Refunds to WalCo when due (the "Administrator Agreement Breach").

27.    Pursuant to H(1) of the Administrator Agreement, and as a result of the Administrator Agreement Breach, Drivesmart owes to WalCo an aggregate amount in excess of $1,462,851.24 for violating Section C(6) of the Administrator Agreement.

28.    In addition, pursuant to Section H(2) of the Administrator Agreement, the amount owed to WalCo accrues a default rate of interest equal to 9.0% per annum, which interest shall be immediately due and payable (the "Administrator Default Interest").

29.    On April 24, 2023, WalCo sent a letter to MVA notifying MVA of its default of its obligations under the Marketer Agreement and demanding that they pay all amounts due WalCo. A true and correct copy of the April 24, 2023 letter is attached hereto as **Exhibit 4**.

30.    On July 31, 2023, WalCo sent a letter to Drivesmart notifying Drivesmart of its default of its obligations under the Administrator Agreement and demanding that they pay all amounts due. A true and correct copy of the July 31, 2023 letter is attached hereto as **Exhibit 5**.

31.    Despite demand, MVA, Drivesmart and Rodd have failed to pay the amounts owed to WalCo.

**COUNT I**
**BREACH OF CONTRACT**
**(Against MVA)**

32.    WalCo re-alleges and incorporates the allegations set forth in Paragraphs 1 through 31 as if fully set forth herein.

33.    The Marketer Agreement is valid and enforceable.

34.    WalCo has fully performed all of its obligations under the Marketer Agreement.

6931347/2/19686.011

FILED DATE: 12/8/2023 3:51 PM   2023L012436

35.    MVA has breached the Marketer Agreement as set forth herein.

36.    As a result of MVA's breach of the Marketer Agreement, WalCo has the right to, and did, accelerate all balances and other amounts owing under the Marketer Agreement.

37.    As a direct and proximate result of MVA's breach of the Marketer Agreement, WalCo has been damaged in an amount in excess of $1,462,851.24 exclusive of Marketer Default Interest, costs, and attorneys' fees.

38.    The breach of the Marketer Agreement, as well as MVA's unreasonable and vexatious delay in the payment of the amounts due after demand for payment, entitles WalCo to prejudgment interest under the Illinois Interest Act.

39.    WalCo is also entitled to attorneys' fees and costs pursuant to Section L(11) of the Marketer Agreement.

WHEREFORE, Plaintiff, WalCo Funding, LLC, prays for judgment against Defendant, Nationwide Vehicle Assurance Corporation d/b/a Motor Vehicle Assurance as follows:

    a.    For monetary damages in an amount to be proven;

    b.    For pre-judgment interest at the statutory rate of 5% per annum pursuant to 815 ILCS 205/1;

    c.    For WalCo's costs and attorneys' fees; and

    d.    Any further relief that this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT
### (Against Drivesmart)

40.    WalCo re-alleges and incorporates the allegations set forth in Paragraphs 1 through 39 as if fully set forth herein.

41.    The Administrator Agreement is valid and enforceable.

6

FILED DATE: 12/8/2023 3:51 PM    2023L012436

42.     Under the Administrator Agreement, Drivesmart guaranteed the payment of any and all Marketer Refunds should MVA fail to pay the Marketer Refunds to WalCo.

43.     MVA failed to pay such Marketer Refunds as set forth herein.

44.     Despite demand, Drivesmart has failed to make any payment to WalCo under the Administrator Agreement, thereby breaching the Administrator Agreement.

45.     As a direct and proximate result of Drivesmart's breach of the Administrator Agreement, WalCo has been damaged in an amount in excess of $1,462,851.24 exclusive of Administrator Default Interest, costs, and attorneys' fees.

46.     The breach of the Administrator Agreement, as well as Drivesmart's unreasonable and vexatious delay in the payment of the amounts due after demand for payment, entitles WalCo to prejudgment interest under the Illinois Interest Act.

47.     WalCo is also entitled to attorneys' fees and costs pursuant to Section L(11) of the Administrator Agreement.

WHEREFORE, Plaintiff, WalCo Funding, LLC, respectfully requests that this Court enter judgment in its favor and against Defendant, Drivesmart Auto Care, Inc., as follows:

     a.     For monetary damages in an amount to be proven;

     b.     For pre-judgment interest at the statutory rate of 5% per annum pursuant to 815 ILCS 205/1;

     c.     For WalCo's costs and attorneys' fees; and

     d.     Any further relief that this Court deems just and proper.

### COUNT III
### BREACH OF GUARANTY AGREEMENT
### (Against Rodd)

48.     WalCo re-alleges and incorporates the allegations set forth in Paragraphs 1 through 47 as if fully set forth herein.

6931347/2/19686.011

49. The Guaranty Agreement is valid and enforceable.

50. Under the Guaranty Agreement, Rodd unconditionally and irrevocably guaranteed the full payment of all indebtedness of MVA to WalCo arising out of the Marketer Agreement.

51. MVA breached the Marketer Agreement as set forth herein.

52. Despite demand, Rodd has failed to make any payment to WalCo under the Guaranty Agreement, thereby breaching the Guaranty Agreement.

53. As a direct and proximate result of Rodd's breach of the Guaranty Agreement, WalCo has been damaged in an amount in excess of $1,462,851.24 exclusive of Marketer Default Interest, costs, and attorneys' fees.

54. The breach of the Guaranty Agreement, as well as Rodd's unreasonable and vexatious delay in the payment of the amounts due after demand for payment, entitles WalCo to prejudgment interest under the Illinois Interest Act.

55. WalCo is also entitled to attorneys' fees and costs pursuant to Section 13 of the Guaranty Agreement.

WHEREFORE, Plaintiff, WalCo Funding, LLC, respectfully requests that this Court enter judgment in its favor and against Defendant, Daniel J. Rodd, as follows:

a. For monetary damages in an amount to be proven;

b. For pre-judgment interest at the statutory rate of 5% per annum pursuant to 815 ILCS 205/1;

c. For WalCo's costs and attorneys' fees; and

d. Any further relief that this Court deems just and proper.

6931347/2/19686.011

Dated: December 8, 2023

Respectfully submitted,

**WALCO FUNDING, LLC,**

Plaintiff.

By: */s/ Matthew R. Barrett*
    One of Its Attorneys

Matthew R. Barrett (mbarrett@hmblaw.com)
Maxwell A. Kling (mkling@hmblaw.com)
**HORWOOD MARCUS & BERK CHARTERED**
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
Phone: (312) 606-3200
Atty No: 34957

69313-47/2/19686.011

FILED DATE: 12/8/2023 3:51 PM   2023L012436

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|                                                        |     |          |
|--------------------------------------------------------|-----|----------|
| WALCO FUNDING, LLC,                                    | )   |          |
|                                                        | )   |          |
| Plaintiff,                                             | )   |          |
|                                                        | )   |          |
| vs.                                                    | )   | Case No. |
|                                                        | )   |          |
| DRIVESMART AUTO CARE, INC,                             | )   |          |
| NATIONWIDE VEHICLE ASSURANCE CORP.                     | )   |          |
| D/B/A MOTOR VEHICLE ASSURANCE, and                     | )   |          |
| DANIEL J. RODD,                                        | )   |          |
|                                                        | )   |          |
| Defendants.                                            | )   |          |

### RULE 222 AFFIDAVIT

Pursuant to Supreme Court Rule 222(B), Plaintiff, WalCo Funding, LLC, certifies that it seeks money damages ▮▮▮ in excess of Fifty Thousand Dollars ($50,000.00).

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

FURTHER AFFIANT SAYETH NOT.

WALCO FUNDING, LLC

By: _____

Its: _CEO_____

6926963/1/19686.011

Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 2/15/2024 9:30 AM

FILED
12/8/2023 3:51 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L012436
Calendar, T
25528130

FILED DATE: 12/8/2023 3:51 PM    2023L012436

# EXHIBIT 1

FILED DATE: 12/8/2023 3:51 PM    2023L012438

## ADMINISTRATOR AGREEMENT

This Administrator Agreement (this "Agreement") is made and entered into on this 16th day of June, 2021, by and between Drivesmart Auto Care, Inc., a New Jersey corporation ("Administrator"), and WalCo Funding, LLC, a Delaware limited liability company ("WalCo"). Administrator and WalCo are each a "Party" to this Agreement and hereinafter collectively referred to as the "Parties."

WHEREAS, Administrator administers the services and claims under vehicle service contracts and other ancillary products ("Contracts"), which Contracts provide for the payment of benefits and/or reimbursement of costs for the repair or replacement of certain parts in the vehicles owned or leased by purchasers of Contracts ("Purchasers"); and

WHEREAS, WalCo is in the business of managing, administering, servicing and funding a payment plan program that affords Purchasers of Contracts the ability to pay the Sales Price on an installment basis ("Payment Plan Program"); and

WHEREAS, in connection with the Payment Plan Program, WalCo and Administrator wish to enter into this Agreement whereby WalCo agrees to advance certain amounts to Administrator on behalf of the Purchaser.

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

A.    Definitions.

"Accepted Account" shall mean those Contracts with a term of 24 months or greater which WalCo has agreed to accept into the Payment Plan Program.

"Administrator Payment Date" shall mean such day of the week designated by WalCo for payment, which shall be on or about the 10th business day after which the Purchaser has made the first payment pursuant to the relevant Payment Plan Agreement.

"Administrator Refund" shall mean the refund amount due to WalCo by Administrator upon the cancellation of an Accepted Account which shall be equal to (a) a fraction, the numerator of which shall be the number of days comprising the term of the canceled Contract less the number of days that such Contract was in force prior to the effective date of cancellation, and the denominator of which shall be the number of days comprising the term of the canceled Contract, multiplied by (b) the Contract Cost.

"Contract Cost" shall mean the portion of the Sales Price of each Contract that Administrator is entitled to receive.

"Down Payment" shall mean, for any Offered Contract, at least 5% of the Sales Price of the Contract, which amount shall be collected by Administrator or a Marketer from the Purchaser.

"Installment Amount" shall mean the Sales Price less the Down Payment.

"Laws" shall mean all applicable federal, state, and local laws, rules, regulations, orders, and other directives of any kind in connection with activities performed (or required to be performed) in connection with the Contracts or this Agreement.

"Marketer" shall mean the person or entity that sells Contracts to Purchasers on behalf of Administrator.

1

FILED DATE: 12/8/2023 3:51 PM   2023L012436

"Marketer Profit" shall mean the portion of the Sales Price of each Contract that the Marketer is entitled to receive.

"Marketer Refund" shall mean the portion of the Installment Amount due to WalCo from the Marketer upon the cancellation of an Accepted Account.

"Offered Contract" shall mean a Contract presented to WalCo by a Marketer on behalf of Administrator for inclusion in the Payment Plan Program.

"Payment Plan Agreement" shall mean the agreement made between the Purchaser and Marketer, which is assigned to WalCo, whereby the Purchaser agreed to pay the Installment Amount to WalCo in monthly installment payments. Each Purchaser included in the Payment Plan Program shall enter into a Payment Plan Agreement. The term of the Payment Plan Agreement shall be equal to not more than one-half the number of months in the term of the related Contract.

"Sales Price" shall mean the price at which Purchaser purchases the Contract. This amount does not include any delinquent charges or other late payment charges which the Purchaser is otherwise required to pay pursuant to the Payment Plan Agreement.

**B.**     WalCo's Obligations.

1.     Administration of Payment Plan Program. WalCo shall be the sole and exclusive administrator of the Payment Plan Program. WalCo shall collect all monthly installment payments on Accepted Accounts in accordance to the terms of the related Payment Plan Agreement and shall be the sole authority on the payment status of all Accepted Accounts. Administrator shall at no time collect payments on Accepted Accounts. If Administrator is notified by WalCo in writing that a Purchaser is in default of the Payment Plan Agreement, Administrator shall terminate the related Contract in accordance to the terms of such Contract. Administrator shall not cancel any Accepted Account or refuse to provide any services or perform any obligation under any Accepted Account on the basis of any real or alleged nonpayment by Purchaser to WalCo or by WalCo to Administrator. In the event of financial hardships, WalCo may, in its sole discretion, defer payments or make other special payment arrangements with any Purchaser (collectively, "Deferments"). A Deferment shall not terminate, modify or otherwise affect Administrator's obligations under the Contract.

2.     Offered Contracts. All Contracts offered to WalCo for inclusion in the Payment Plan Program shall be submitted to WalCo by Administrator's Marketers in a form and substance acceptable to WalCo. Administrator shall provide WalCo with a verification of each new Offered Contract promptly with such information and documentation required by WalCo, including, but not limited to, the amount of the Contract Cost and Marketer Profit. WalCo may elect, at its sole discretion, to accept or reject any Offered Contract for inclusion in the Payment Plan Program. If WalCo elects to accept a Contract, WalCo shall notify Administrator of its acceptance of the Contract in a manner agreed to by the Parties. Administrator agrees that once a Contract has been offered to WalCo for inclusion in the Payment Plan Program, Administrator shall not offer such Contract to any other entity for provision of payment plan services unless WalCo has provided Administrator or Marketer with written notice of its rejection of such Contract.

**C.**     Administrator's Obligations.

1.     Administration of Contract. Administrator shall solely and exclusively administer the Contract. Administrator's obligations under the Contract and this Agreement include, but are not limited to:  adjudication of claims; payment of claims; issuance of refunds to Purchaser upon cancellation of the Contract; and any other issues relating to the Contract itself.  WalCo shall have no responsibility, liability or obligations with respect to any of Administrator's obligations under the Contract. Each Purchaser shall have the right, under the relevant Contract to

FILED DATE: 12/8/2023 3:51 PM    2023L012436

cancel the Contract and Payment Plan Agreement at any time without further obligation to Administrator or WalCo. If Administrator receives notice from a Purchaser that such Purchaser intends to cancel its Contract, then Administrator shall immediately notify WalCo in writing of such Purchaser's cancellation.

2.    Purchaser Refunds. In addition to any Administrator Refunds and/or Marketer Refunds which may be due to WalCo upon the cancellation of an Accepted Account, Administrator shall be solely and wholly responsible for refunding to each Purchaser all amounts required to be refunded to Purchaser upon the cancellation of a Contract. WalCo shall have no obligation to refund such amounts to any Purchaser, and Administrator shall not inform any Purchaser that WalCo is obligated to refund such amounts. Administrator may delegate its duty to issue refunds to a Marketer, but shall remain liable for any failure of a refund to be properly paid. Administrator shall cause to be paid or pay such refunds in full on a timely basis, in accordance with the terms of the Contract and any applicable Laws.

3.    Compliance. Administrator shall, and shall cause its affiliates to, perform its obligations under this Agreement in compliance with all applicable Laws and shall maintain all permits, licenses, franchises, approvals and certificates as are necessary to perform their respective obligations hereunder.

4.    Insurance. The obligations of Administrator under the Contracts shall be secured by one or more insurance policies and/or reinsurance accounts (the "Policies") from an insurance company or other party ("Insurer"), which Policies insure the performance or payment by Administrator under the Contract. Administrator shall provide WalCo with notice of all its Policies and provide to WalCo, upon WalCo's request, copies of all documents in connection with any such Policies. Administrator shall provide written notice to WalCo prior to any change in Insurer or any material change to the Policies.

5.    Oversight of Marketers. Administrator shall cause all Marketers working on its behalf to: (i) collect a Down Payment; (ii) adhere to all policies and procedures issued by WalCo related to the Payment Plan Program, as modified by WalCo from time to time; (iii) offer the Contract at the same Sales Price regardless of whether or not the Purchaser elects to enter the Payment Plan Program and under no circumstances offer any discount that would encourage the Purchaser to waive election of the Payment Plan Program; (iv) pay any Marketer Refunds due to WalCo by Marketer, and (e) be in compliance with all relevant Laws and industry standards.

6.    Guaranty of Marketer Refund. Administrator hereby guarantees the payment of any Marketer Refunds due to WalCo. If the Marketer shall not pay the Marketer Refund to WalCo when due, WalCo shall send a monthly statement of the outstanding Marketer Refund and Administrator shall pay such amounts to WalCo in accordance to Section E below.

7.    Audit Rights. WalCo shall have the right, from time to time and on at least 30 business days' prior notice, to access and audit Administrator's books and records or cause a third-party (subject to execution of a confidentiality agreement) to perform such audit to verify compliance with this Agreement. The Audit will be exclusively confined to financial information solely pertaining to contracts financed by WalCo. The Audit will be solely confined to paper documentation, records, information provided by the Administrator. Administrator shall permit WalCo and/or such third-party to enter Administrator's premises to conduct such audits, shall make documents and records related to the audit available for inspection and audit, and shall reasonably assist WalCo and/or such third-party with such audit. WalCo and/or such third-party may make copies of documents and other records related to such compliance at WalCo's expense.

8.    Notice Rights. Administrator shall notify WalCo in writing within 10 business days of any existing inquiry, investigation, complaint or other matter pending against or with respect to Administrator and/or its Marketers by any local, state or federal government or regulatory agency, or any consumer or professional association which would have a material adverse effect on Administrator's ability to perform its obligations under this Agreement..

3

FILED DATE: 12/8/2023 3:51 PM    2023L012436

9.      Endorsement and Deposit of Payments. Administrator shall appoint WalCo to, and WalCo shall have the right to, endorse and deposit checks WalCo receives in the name of Administrator toward payment of Accepted Accounts. Administrator hereby indorses all payments paid Accepted Accounts to Walco.

**D.**     Payments to Administrator. For each Accepted Account, WalCo shall pay to Administrator the Contract Cost on Administrator Payment Date. In the event that the Sales Price with respect to any Accepted Account is reduced after the Contract Cost has been paid to Administrator, Administrator shall remit payment of the full amount of such reduction within 10 days following such reduction.

1.      Right to Withhold and Setoff. In the event WalCo, in its sole discretion, deems itself insecure for any reason, WalCo shall have the right to (i) withhold and retain the Contract Cost for each Accepted Account due to Administrator until such time as WalCo deems itself secure, (ii) offset any Contract Costs or other amounts due to Administrator by WalCo hereunder against any WalCo Refunds or other amounts due to WalCo from Administrator, or (iii) require Administrator to post a letter of credit or financial performance bond, in a form and amount acceptable to WalCo, to secure the obligations of Administrator hereunder.

**E.**     Refund on Accepted Account Cancellations. If an Accepted Account is cancelled by the Purchaser or involuntarily by WalCo as a result of a breach of the Payment Plan Agreement, Administrator shall refund to WalCo the Administrator Refund for such cancelled Accepted Account. WalCo shall send Administrator monthly statements setting forth the following: (i) Accepted Accounts for the previous month which WalCo deems cancelled, (ii) Administrator Refund due to WalCo and (iii) any unpaid Marketer Refunds due to WalCo. Administrator shall deliver the Administrator Refund plus any unpaid Marketer Refunds due to WalCo for the cancelled Accepted Accounts within 10 days following the date such monthly statement is sent. If Administrator refunds to WalCo an amount in excess of Administrator Refund, WalCo shall apply the difference to any Marketer Refunds due to WalCo on such cancelled Accepted Account. If Administrator refunds less than Administrator Refund, then WalCo shall first attempt to collect the deficit from the Marketer that sold such Accepted Account and if such deficiencies cannot be collected from the Marketer, then WalCo shall employ its right to offset pursuant to Section D(1).

**F.**     Representations and Covenants.

1.      Mutual Representations and Warranties. Each Party hereby represents and warrants that: (i) such Party is validly existing and in good standing under the laws of its jurisdiction of organization, and is duly qualified to do business in each jurisdiction where, because of the nature of its activities or properties, such qualification is required; (ii) such Party is duly authorized to execute and deliver this Agreement and perform its obligations under this Agreement; (iii) such Party is in compliance with all applicable laws, and the execution and performance by either Party of this Agreement shall not constitute a violation of any applicable law; and (iv) this Agreement is the legal, valid and binding obligation of the Parties, enforceable against each Party in accordance with its terms, subject to bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity.

2.      Administrator Representation and Warranties. Administrator hereby represents and warrants that: (i) each Accepted Account shall be cancellable at any time and for any reason by the Purchaser without any further obligation of Purchaser; and (ii) the Sales Price of the Contract shall be the same whether or not the Purchaser elects to purchase the Contract under the Payment Plan Program, and shall cause the Contracts to be sold on such basis.

**G.**     Term; Termination. This Agreement shall commence on the date hereof and continue until terminated by either Party in accordance with this Section. This Agreement may be terminated by 30 days' written notice from the terminating Party to the other Party. Termination of this Agreement shall not affect WalCo's rights in the Accepted Accounts. In addition, if this Agreement is terminated due to a breach by a Party, then the non-breaching Party shall retain all rights with respect to such breach.

**H.** Events of Default.

1.    Events of Default.  The occurrence of any one or more of the following events shall constitute an event of default hereunder ("Event of Default"): (i) Administrator fails to pay any amount due to WalCo within 30 business  days following the date when due, unless otherwise agreed to in writing by the Parties; (ii) any representation, warranty or document made or furnished by Administrator as set forth in the Agreement, or otherwise made in connection with this Agreement, shall be or become untrue; (iii) Administrator fails to comply with any material provision of this Agreement, and such failure is not cured within 45 business days following notice of such failure by WalCo to Administrator; (iv) Administrator shall make an assignment for the benefit of creditors; or (v) proceedings in bankruptcy or for reorganization of Administrator or for the readjustment of any of its debts under the bankruptcy law, as amended, or under any other act or law, whether state or federal, now or hereafter existing, for the relief of debtors, shall either be commenced involuntarily against Administrator or are filed by Administrator.

2.    Remedies.  Upon the occurrence of any Event of Default, WalCo may (i) assess an interest rate of 9% per annum on any amounts due to WalCo by Administrator, which interest shall accrue from the expiration of the grace period as stated within (H)(1) following the date the payment is due until the outstanding amount is received by WalCo; (ii) withhold or offset amounts due to Administrator in accordance to Section D(1); (iii) immediately terminate the Agreement; and/or (iv) seek any other remedy, at law or in equity, to which it is entitled.

**I.**    Security Interest.  Administrator grants to and assigns WalCo, as security for all present and future obligations, a continuing first-priority and exclusive security interest in the Accepted Accounts, proceeds of Accepted Accounts, any after acquired property from the proceeds of the Accepted Accounts and any lien rights associated with the Accepted Accounts (collectively the "Collateral").  Administrator authorizes WalCo at any time to file any such financing statements, continuation statements and other agreements, instruments, documents and to do such other acts as WalCo may reasonably deem necessary, customary or desirable to establish, maintain, validate and/or perfect this security interest.

**J.**    Indemnification.  Administrator shall, at its expense, indemnify, defend and hold harmless WalCo and its directors, officers, employees, agents, affiliates and successors, from any claim, action, allegation, damage, loss, judgment, award or costs (including attorneys' fees) as a result of (i) a breach of any representation, warranty, covenant, or obligation under this Agreement by Administrator; (ii) any violation of applicable law by Administrator or its Marketers in connection with the Contracts; (iii) any tortious, fraudulent, unlawful or unauthorized acts or omissions by Administrator.

**K.**    Protection of Confidential Information.  Each Party recognizes that the other Party has and will continue to develop certain trade secrets, know-how, records, manuals, correspondence, documents, financial and sales information, reports, customer lists, policies, procedures, proposals, marketing plans, ideas, concepts, services and any other proprietary information which is confidential (collectively "Confidential Information").  Each Party agrees: (a) to hold in trust and maintain confidential; (b) not to disclose to others without prior written approval from the disclosing Party; (c) not to use for any purpose, other than such purpose as may be authorized in writing by the disclosing Party; and (d) to prevent duplication of and disclosure to any other party, any information received from the disclosing Party or developed, presently held or continued to be held, or otherwise obtained by the receiving Party under this Agreement; provided that a Party may disclose such information to its affiliates and those directors, officers, employees or other authorized agents and representatives (including legal counsel, lenders and investors and prospective lenders and investors) of a Party or its affiliates to whom disclosure is reasonably necessary.  The receiving Party may disclose the disclosing Party's information to the extent necessary to attorneys of litigants or to governmental authorities to comply with any obligation imposed on the receiving Party in connection with a proceeding in a court or other governmental authority of competent jurisdiction, provided that the receiving Party gives reasonably prompt notice to the disclosing Party of the need for such disclosure, together with such other information about the proceeding as will enable the disclosing Party to evaluate the obligation and

5

FILED DATE: 12/8/2023 3:51 PM    2023L012436

FILED DATE: 12/8/2023 3:51 PM   2023L012436

the need and to elect either to intervene or otherwise appear or act in the proceeding to protect directly the disclosing Party's information at the expense of the disclosing Party. Alternatively, the disclosing Party may request the receiving Party to, and if so requested, the receiving Party shall, make a reasonable and diligent effort at the expense of the disclosing Party to obtain a protective order or otherwise to protect the confidentiality of information sought to be obtained in said proceeding.

The foregoing obligations of confidence, nondisclosure, and nonuse shall not apply to any information that: (a) was in the public domain at the time of disclosure by one Party to the other; (b) enters the public domain through no fault of the disclosing Party; (c) was communicated to one Party by a third party free of any obligation of confidence known to the recipient; or (d) was developed by directors, officers, employees or agents of, or consultants to, one Party independently of, and without reference to, the proprietary information of another Party, and, in the case of the disclosing Party, was not developed while performing under this Agreement.

**L.**     Miscellaneous.

1.     Governing Law/Interpretation. This Agreement shall be construed in conformity with the laws of the State of Illinois without regard to choice of law or conflict of law rules. The Parties hereto irrevocably agree that all actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement, shall be litigated only in courts having situs within Cook County, Illinois and each Party hereby submits to the personal jurisdiction of such courts.

2.     WAIVER OF JURY TRIAL. ADMINISTRATOR AND WALCO, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE IRREVOCABLY, THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, THE COLLATERAL, OR ANY OTHER AGREEMENT EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT OR COURSE OF DEALING IN WHICH ADMINISTRATOR AND WALCO ARE ADVERSE PARTIES.

3.     Effect of Change of Law Regulation or Administrative Rule. In the event of any change in any federal, state or other governing law, regulation or administrative rule, the effect of which is reasonably likely to render this Agreement in violation of such law, regulation or administrative rule, or reasonably likely to materially and adversely affect the manner in which either Party may perform or be compensated for its services under this Agreement, the Parties agree to negotiate in good faith to restructure or replace this Agreement with one which complies with any such law, regulation or administrative rule, and which gives the respective Parties economic results as similar as possible to those resulting from this Agreement.

4.     Severability. Whenever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law; but if any provision hereof or the application thereof to any Party or circumstance is prohibited by or invalid under applicable law, such provision shall be effective only to the minimal extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions hereof or the application of such provisions to other Parties or circumstances.

5.     Successors. This Agreement and all of the terms and provisions hereof shall be binding upon and shall inure to the benefit of the Parties, their respective legal representatives, heirs, successors or assigns.

6.     Entire Agreement. This Agreement contains the entire understanding among the Parties and supersedes any prior understandings and/or written or oral agreements among them respecting the within subject matter. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the Parties hereto relating to the subject matter hereof that are not fully expressed herein.

FILED DATE: 12/8/2023 3:51 PM   2023L012436

7.    Amendments.  This Agreement may be amended or modified only by an agreement in writing signed by the Parties hereto and expressly identified as an amendment or modification

8.    Independent Contractors. The Parties are independent contractors, and nothing in this Agreement will be construed as creating an employer-employee relationship, a partnership, joint venture or other relationship between the Parties. Neither Party has any authority to assume or create obligations or liability of any kind on behalf of the other Party.

9.    Waiver. No assent or waiver, express or implied, to or of any breach of any one or more of the covenants, conditions or provisions hereof shall be deemed to be a waiver of any subsequent breach of the same or any other covenant, condition or provision hereof. No waiver of any provision hereof shall be effective unless made in writing by the waiving Party.

10.    Assignment. This Agreement may not be assigned by Administrator without the prior written consent of WalCo, which consent shall not be unreasonably withheld.

11.    Prevailing Party Costs.  The prevailing parties in any litigation in connection with this Agreement shall be entitled to recover from the non-prevailing party all costs and expenses, including, without limitation, reasonable attorneys' and paralegals' fees and costs incurred by such party in connection with any such litigation.

12.    Notices.  Any notices, offers, acceptances and other communications required hereunder shall be in writing and deemed to have been given and received (i) when personally delivered, (ii) one day after being sent by a nationally recognized overnight courier with guaranteed next day delivery (iii) three days after being mailed by United States certified mail, return receipt requested, postage prepaid, or (iv) when delivered by email with a copy sent by a nationally recognized overnight courier, to the parties at their respective addresses as set forth below.

13.    Construction. This Agreement shall be deemed to have been jointly drafted by the respective Parties, and the rule of construction of contracts that ambiguities are construed against the drafting Party shall not be applied against any Party. Both Parties acknowledge that they have had the opportunity to consult with counsel and negotiate this contract. Whenever the masculine, feminine, neuter, singular, plural, conjunctive or disjunctive terms are used in this Agreement, they shall be deemed to include the others whenever the context so indicates. Headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

14.    Survival of Rights. Except to the extent provided to the contrary in this Agreement, no termination (regardless of cause or procedure) of this Agreement shall in any way affect or impair the power, obligation, duties, rights and liabilities of Administrator or WalCo relating to (i) either Party's obligations under Sections B through E, or (ii) any of the undertakings, agreements, covenants, warranties and representations of Administrator or WalCo with respect to the above. All such undertakings, agreements, covenants, warranties and representations shall survive such termination or cancellation.

15.    Rights of Creditors and Third Parties under the Agreement.  This Agreement is entered into between Administrator and WalCo for the exclusive benefit of Administrator and WalCo and their respective successors and permitted assigns and is expressly not intended for the benefit of any other Party.  Except and only to the extent provided by applicable law, no other creditor or third party shall have any rights under this Agreement.

16.    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed to be one Agreement.  Signatures transmitted by facsimile or other electronic format shall be considered authentic and binding.

17.    Further Assurances. Each Party agrees to do all acts and things and to make, execute and deliver

7

such written instruments, as may from time to time be reasonably required to carry out the terms and provisions of this Agreement.

*[Signature Page to Follow]*

FILED DATE: 12/8/2023 3:51 PM   2023L012436

FILED DATE: 12/8/2023 3:51 PM   2023L012436

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first set forth above.

**ADMINISTRATOR:**

DRIVESMART AUTO CARE, INC.

By: _____
Print Name: _____
Title: _____

Address: _____
City, State, Zip: _____
Attn: _____
Phone: _____
Fax: _____

**WALCO:**

WALCO FUNDING, LLC

By: _____
Print Name: Paul M Walder
Title: CFO

Address: 440 N Wells suit 410
City, State, Zip: Chicago IL 60654
Attn: Legal Department
Phone: 800-712-2542
Fax: _____

9

FILED DATE: 12/8/2023 3:51 PM   2023L012436

# EXHIBIT 2

FILED DATE: 12/8/2023 3:51 PM    2023L012436

## MARKETER AGREEMENT

This Marketer Agreement (this "Agreement") is made and entered into on this 26th of January, 2021, by and between Nationwide Vehicle Assurance Corporation d/b/a Motor Vehicle Assurance, a New Jersey corporation ("Marketer"), and WalCo Funding, LLC, a Delaware limited liability company ("WalCo"). Marketer and WalCo are each a "Party" to this Agreement and hereinafter collectively referred to as the "Parties."

WHEREAS, Marketer markets and sells vehicle service contracts and other ancillary products ("Contracts"), which Contracts provide for the payment of benefits and/or reimbursement of costs for the repair or replacement of certain parts in the vehicles owned or leased by purchasers of Contracts ("Purchasers") and on which Marketer earns profits from the sale; and

WHEREAS, WalCo is in the business of managing, administering, servicing and funding a payment plan program that affords Purchasers of Contracts the ability to pay the Sales Price on an installment basis ("Payment Plan Program"); and

WHEREAS, in connection with the Payment Plan Program, WalCo and Marketer wish to enter into this Agreement whereby WalCo agrees to advance certain amounts to Marketer on behalf of the Purchaser.

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**A.**    **Definitions.**

"Accepted Account" shall mean those Contracts which WalCo has agreed to accept into the Payment Plan Program in the regular course of business.

"Adjustment" shall mean, in the event that the Sales Price of an Accepted Account is reduced by Marketer for any reason (including upon the request of the Purchaser) after the Advanced Amount has been paid to Marketer by WalCo, the difference between the original Sales Price and the reduced Sales Price.

"Administrator" shall mean the person or entity that administers the services and claims under the Contracts and on behalf of whom Marketer sells and markets the Contracts.

"Administrator Refund" shall mean the amount received by WalCo from an Administrator upon the cancellation of an Accepted Account.

"Advanced Amount" shall mean the portion of Marketer Profit advanced to Marketer, which shall be equal to a) the Advance Rate, multiplied by b) Marketer Profit.

"Advance Rate" shall mean the percentage rates, a set forth in Exhibit A, which shall be applied to the calculation of the Advanced Amount based on the number of installment payments in the relevant Payment Plan Agreement.

"Affiliate" shall mean any individual, corporation, partnership, limited liability company, trust, estate, or any other entity that directly or indirectly controls, is controlled by, or is under common control with Marketer, which control in such context meaning the ability to direct the management or policies of such individual or entity through ownership of voting shares or other securities, pursuant to a written agreement, or otherwise.

"Contract Cost" shall mean the portion of the Sales Price of each Contract that Administrator is entitled to receive.

"CRM Provider" shall mean the person or entity who provides Marketer with software or services related to the generation and distribution of the Contract and Payment Plan Agreement to the Purchaser.

FILED DATE: 12/8/2023 3:51 PM   2023L012436

"Down Payment" shall mean, for any Offered Contract, at least 5% of the Sales Price of the Contract, which amount shall be collected by Marketer from the Purchaser.

"Earned WalCo Fee" shall mean the portion of the WalCo Fee due to WalCo upon the cancellation of an Accepted Account.

"Funding" shall mean the sum of all Advanced Amounts paid to the Marketer on each Marketer Payment Date or when otherwise due hereunder.

"Installment Amount" shall mean the Sales Price less the Down Payment.

"Laws" shall mean all applicable federal, state, and local laws, rules, regulations, orders, decrees, and other directives of any kind in connection with activities performed (or required to be performed) in connection with the Contracts, the Payment Plan Agreement or this Agreement, including, without limitation, state and federal credit and lending laws, the Truth in Lending Act of 1968, the Telephone Consumer Protection Act of 1991, the Telemarketing Consumer Fraud and Abuse Prevention Act, or any similar rule, order, law or regulation relating to telemarketing or consumer fraud and the Federal Electronic Funds Transfer Act, Federal Reserve Regulation E or any similar rule, order, law or regulation s with respect to the transfer of funds between Purchaser and Administrator, Marketer or WalCo by pre-authorized draft or direct debit.

"Marketer" shall mean the person or entity that sells Contracts to Purchasers on behalf of Administrator.

"Marketer Payment Date" shall mean such day of the week designated by WalCo for payment in accordance with WalCo's then current policies and procedures, which shall be on or about the tenth (10th) business day after which the Purchaser has successfully made their first payment pursuant to their relevant Payment Plan Agreement.

"Marketer Profit" shall mean the portion of the Sales Price of each Contract that Marketer is entitled to receive, which shall be equal to a) the Installment Amount, less (d) Contract Cost, and less (e) the WalCo Fee.

"Marketer Obligations" shall mean, in the aggregate, the Installment Amount of each Accepted Account and all other liabilities and obligations created or arising out of each Accepted Account, whether now or hereafter existing, whether now due or to become due, direct or indirect, absolute or contingent.

"Marketer Refund" shall mean the portion of the Installment Amount due to WalCo from Marketer upon the cancellation of an Accepted Account, which shall be equal to a) the Installment Amount, plus (b) any NSF charges, chargeback amounts and related chargeback fees, and any other bank-related fees and/or penalties due to WalCo by the Purchaser, less (c) the Administrator Refund, and less (d) any payments received by WalCo from Purchaser on account of such Contract.

"Minimum WalCo Fee" shall mean the minimum Earned WalCo Fee due to WalCo based on the number of installment payments in the Payment Plan Agreement, as set forth in Exhibit A.

"Offered Contract" shall mean a Contract presented to WalCo by a Marketer on behalf of Administrator for inclusion in the Payment Plan Program.

"Payment Plan Agreement" shall mean the agreement made between the Purchaser and Marketer, which is assigned to WalCo, whereby the Purchaser agrees to pay the Installment Amount to WalCo in monthly installment payments. Each Purchaser included in the Payment Plan Program shall enter into a Payment Plan Agreement. The term of the Payment Plan Agreement shall be equal to not more than one-half the number of months in the term of the related Contract.

"Reserve" shall mean the portion of Marketer Profit retained by WalCo in accordance to Section C(2).

"Reserve Shortage" shall mean any deficiencies in the Reserve as a result of Marketer Refunds or Adjustments due to WalCo, such that, WalCo reasonably believes that the amounts in the Reserve shall not

FILED DATE: 12/8/2023 3:51 PM    2023L012436

satisfy all direct and contingent Marketer Obligations.

"Sales Price" shall mean the price at which Purchaser purchases the Contract. This amount does not include any delinquent charges or other late payment charges which the Purchaser is otherwise required to pay pursuant to the Payment Plan Agreement.

"WalCo Fee" shall mean the fee, based on the number of installment payments in the relevant Payment Plan Agreement, due to WalCo from Marketer for the administration and management of the Payment Plan Program in accordance with Section C(1) and Exhibit A.

"Zero Pay Cancel" shall mean any Accepted Account that has cancelled before the Purchaser has successfully made their first payment pursuant to their relevant Payment Plan Agreement, including first payments that are reversed by the Purchaser.

**B.    Accepted Accounts.**

1.    Administration of Payment Plan Program. WalCo shall be the sole and exclusive administrator of the Payment Plan Program. WalCo shall collect all monthly installment payments on Accepted Accounts in accordance with the terms of the related Payment Plan Agreement and shall be the sole authority on the payment status of all Accepted Accounts. Marketer shall at no time collect payments on Accepted Accounts, unless otherwise agreed to by the Parties.

2.    Offered Contracts. Marketer shall submit all Contracts to WalCo for inclusion in the Payment Plan Program in a form and substance acceptable to WalCo with such information and documentation required by WalCo, including, but not limited to, the amount of the Contract Cost and Marketer Profit. If Marketer is using a CRM Provider, Marketer shall authorize its CRM Providers to provide to WalCo any and all information, documents and reporting regarding Accepted Accounts which is in such CRM Provider's possession from time to time. WalCo may elect, at its sole discretion, to accept or reject any Offered Contract for inclusion in the Payment Plan Program. If WalCo elects to accept a Contract, WalCo will notify Marketer and Administrator of its acceptance of the Contract by way of daily, weekly and monthly reports that are available in the regular course of business. Marketer agrees that once a Contract has been offered to WalCo for inclusion in the Payment Plan Program, Marketer shall not offer such Contract to any other entity for provision of payment plan services unless WalCo has provided Marketer with written notice of its rejection of such Contract.

**C.    Payments to Marketer.** For each Accepted Account, WalCo shall pay to the Marketer the Advanced Amount on the Marketer Payment Date.

1.    WalCo Fee. WalCo shall receive the applicable WalCo Fee for each Accepted Account included within the Payment Plan Program. The WalCo Fee shall be earned based on the number of payments WalCo receives from the Purchaser in accordance to the Earning Schedule set forth in Exhibit A. Upon the occurrence of a material breach of this Agreement or if the Federal Reserve increases the interest rates, WalCo may increase the WalCo Fee as determined in its reasonable discretion. Except as set forth above, any modifications to this Earning Schedule as set forth in Exhibit A, shall be negotiated as an amendment to this Agreement, and only agreeable if both Parties consent to said modification to the current WalCo Fee.

2.    Reserve. WalCo shall have the right to establish a Reserve with respect to the Accepted Accounts, as determined by WalCo, in its sole discretion. Marketer acknowledges and agrees that the Reserve is an accounting construct that WalCo uses to secure Marketer's deferred obligations and possible future Accepted Account cancellations. The balance of the Reserve is intended, at all times, to exceed the expected Marketer Obligations, and/or any amount necessary to satisfy all direct and contingent obligations to WalCo under this Agreement or otherwise. Any Reserve Shortages as a result of Accepted Account cancellations or Adjustments must be repaid to WalCo by Marketer. The Reserve rates, as set forth in Exhibit A, are subject to modification from time to time at the reasonable discretion of WalCo. WalCo shall have no obligation to pay Marketer any portion of the Reserve until this Agreement has been terminated and all Marketer Obligations have been fully satisfied. Subject to the satisfaction of all Marketer Obligations due to WalCo, upon the Administrator's request, WalCo shall pay the remaining Reserve amounts first to the Administrator to cover all losses incurred by Administrator for refunding

Purchasers on behalf of such Marketer and then any Reserve amounts remaining after accounting for payments to WalCo and Administrator shall be paid to such Marketer. Marketer hereby explicitly authorizes WalCo to release Reserve funds to the Administrator as set forth in this Section. WalCo shall provide such daily, weekly and monthly reports, records and documents as available in the regular course of WalCo's business related to the Reserve. Upon Marketer's request, WalCo may also provide custom Reserve reporting, as reasonable, related to Accepted Accounts.

       3.    <u>Deductions</u>. WalCo shall deduct any outstanding Adjustments or Marketer Refunds due on Zero Pay Cancels due to WalCo from the next Funding due to Marketer. If there are no Fundings due to Marketer, WalCo shall either deduct such amount from the Reserve (if the funds in the Reserve exceed all projected Marketer Obligations due to WalCo) or provide Marketer with an invoice of the amounts due and Marketer shall remit such amounts to WalCo within 10 days of the date of the invoice.

       4.    <u>Right to Withhold and Setoff</u>. Upon the occurrence of a material breach of this Agreement or a dispute between the Parties whereby WalCo, in its reasonable, good faith determination, deems itself insecure as to any Marketer Obligations due to WalCo by Marketer, WalCo shall have the right to (i) withhold and retain the Advanced Amount for each Accepted Account due to Marketer, or (ii) offset any Advanced Amounts due to Marketer by WalCo hereunder against any Marketer Refunds or other amounts due to WalCo from Marketer.

**D.**    <u>Refund on Accepted Account Cancellations</u>. Each Purchaser shall have the right, under the relevant Contract to cancel the Contract and Payment Plan Agreement at any time without further obligation to Administrator, Marketer or WalCo. If an Accepted Account is cancelled by the Purchaser or by WalCo as a result of a breach of the Payment Plan Agreement, the Marketer Refund shall immediately become due and owing to WalCo by Marketer on such cancelled Accepted Account. Except for any Zero Pay Cancels and Adjustments which shall be deducted directly from Fundings, WalCo shall deduct all Marketer Refunds due to WalCo from the Reserve; provided, however, in the event that there are any Reserve Shortages, as calculated by WalCo, WalCo shall either (i) deduct such Marketer Refunds from the next subsequent Funding or (ii) provide Marketer with an invoice of the Marketer Refunds due and Marketer shall remit such amounts to WalCo within 10 days of the date of the invoice.

**E.**    <u>Representations and Covenants</u>.

       1.    <u>Mutual Representations and Warranties</u>. Each Party hereby represents and warrants that: (i) such Party is validly existing and in good standing under the laws of its jurisdiction of organization, and is duly qualified to do business in each jurisdiction where, because of the nature of its activities or properties, such qualification is required; (ii) such Party is duly authorized to execute and deliver this Agreement and perform its obligations under this Agreement; (iii) the execution and performance by such Party of this Agreement shall not constitute a violation of any applicable Laws; and (iv) the execution and performance by either Party of this Agreement shall result in a breach of any contract to which either Party is a party or by which its assets are bound; and (iv) this Agreement is the legal, valid and binding obligation of the Parties, enforceable against each Party in accordance with its terms, subject to bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity.

       2.    <u>Marketer Representation and Warranties</u>. Marketer hereby represents and warrants that:

       (a)    Marketer shall adhere to all policies and procedures issued by WalCo related to the Payment Plan Program, as may be modified from time to time, including, without limitation, utilizing only forms and agreements provided by or approved in writing by WalCo, maintaining copies of all documents and authorizations in connection with Accepted Accounts for a minimum of 48 months, and collecting a Down Payment.

       (b)    Marketer shall enter into a Payment Plan Agreement with each Purchaser of an Accepted Account and upon WalCo's acceptance of such Accepted Account hereby assigns such Payment Plan Agreement to WalCo.

FILED DATE: 12/8/2023 3:51 PM    2023L012436

(c)     Marketer is in compliance with all applicable Laws and does not engage in "voice-blasting" or "robo-dialing" practices. Marketer shall, at all times, during the term of this Agreement, comply with applicable Laws and best practices with respect to Marketer's industry or the products covered by the Contracts and maintain internal procedures and controls to ensure such compliance.

(d)     Marketer has notified WalCo in writing of any existing litigation or arbitration which would have a material adverse effect on Marketer's ability to Marketer's performance under this Agreement, and no such action has, to the knowledge of Marketer, been threatened against Marketer. Marketer shall notify WalCo in writing, within 10 business days, or a reasonable time based upon a good faith effort to notice, of any litigations and/or arbitrations the Marketer becomes aware of, which name WalCo as a defendant.

(e)     Market has notified WalCo in writing of any existing inquiry, investigation, complaint or other matter pending against or with respect to Marketer by any local, state or federal government or regulatory agency, or any consumer or professional association which would have a material adverse effect on Marketer's ability to Marketer's performance under this Agreement. Marketer shall notify WalCo in writing, within 10 business days, or a reasonable time based upon a good faith effort to notice, of any local, state, or federal government or regulatory agency, or any professional association the Marketer becomes aware of, which name WalCo as a defendant.

(f)     Marketer has notified WalCo in writing of all fictitious business names ("doing-business as" names) it currently uses or has used at any time during the past 5 years. Marketer shall notify WalCo in writing within 10 days if Marketer modifies an existing fictitious business name or establishes a new one.

(g)     Marketer shall not, without at least 30 days' prior written notice of such change, make any material changes related to (i) ownership structure or (ii) corporate structure.

(h)     Marketer has all necessary licenses, approvals and other authority to carry out its business in accordance with all applicable Laws.

(i)     Each Accepted Account sold by Marketer shall be cancellable at any time and for any reason by the Purchaser without any further obligation of Purchaser. If so delegated to Marketer by Administrator, Marketer shall immediately issue a refund to the Purchaser any amounts due and owing to the Purchaser upon cancellation of an Accepted Account. Marketer understands that WalCo shall have no obligations to refund any amounts to Purchasers upon the cancellation of an Accepted Account.

(j)     The Sales Price of the Contract shall be the same whether or not the Purchaser elects to purchase the Contract under the Payment Plan Program and Marketer shall cause the Contracts to be sold on such basis. Marketer shall only offer such discounts and deductions with respect to any Accepted Account in accordance to a written policy which has been provided in advance to WalCo by Marketer and shall not offer any discount that would encourage the Purchaser to waive election of the Payment Plan Program. Marker shall not charge or assess any interest or finance fees, or any other amounts that could be deemed to be interest or finance fee charges on Offered Contracts.

(k)     All Offered Contracts are free and clear of any and all liens, claims or interests of any kind by any person or third party. Marketer shall not grant or allow any lien, security interest, mortgage or encumbrance of any kind upon any portion of the Accepted Account or otherwise transfer, sell, assign, convey, pledge or permit to be granted any interest of any kind whatsoever in any Accepted Account.

(l)     Financial statements, accounts receivable summaries, capitalization tables and other materials and information provided to WalCo prior to the date hereof are true and correct in all material respects and do not fail to state any material facts regarding Marketer. Upon request of WalCo, Marketer shall provide financial and equity holder information with respect to Marketer and its Affiliates.

5

(m) If Marketer sells, either directly or through Affiliate, a new Contract to any Purchaser within 180 days following cancellation of such Purchaser's Accepted Account (funded through WalCo) and such Purchaser wishes to pay for such new Contract in installment payments, Marketer shall first offer such new Contract to WalCo for inclusion in the Payment Plan Program before offering such new Contract to another entity.

(n) Marketer shall promptly comply with and/or resolve all complaints, requests for information, or other documents filed with or by any local, state or federal government or regulatory agency, or any consumer or professional association, a Purchaser or any other third party.

(o) Marketer shall not take any action intended to hinder or prevent any payment of any amounts due to WalCo, including, without limitation, misdirecting Purchaser's payments or encouraging Purchasers to cancel Accepted Accounts.

(p) Marketer shall not, directly or indirectly, through an Affiliate or otherwise, take action or omit from taking action which would in any way circumvent the performance of this Agreement.

(q) During the term of this Agreement and for a period of 2 years thereafter, Marketer shall not solicit or hire any employees or contractors of WalCo, as well as any former employees or contractors who were employed or engaged by WalCo at any time during the term of this Agreement.

(r) Marketer hereby appoints WalCo as Marketer's attorney in fact to, and WalCo shall have the right to, endorse and deposit checks WalCo receives in the name of Marketer toward payment of Accepted Accounts. Marketer hereby indorses all payments paid Accepted Accounts to WalCo.

**F.** Security Interest. Marketer hereby grants to and assigns WalCo, as security for all present and future Marketer Obligations, a continuing first-priority and exclusive security interest in the Accepted Accounts, proceeds of Accepted Accounts, any after acquired property from the proceeds of the Accepted Accounts and any lien rights associated with the Accepted Accounts. Furthermore, upon the acceptance of an Accepted Account, Marketer hereby assigns and transfers to WalCo all rights and title to the Payment Plan Agreement or other agreement entered into between the Marketer and Purchaser related to the payment of such Accepted Account. Marketer authorizes WalCo at any time to file any such financing statements, continuation statements and other agreements, instruments, documents and to do such other acts as WalCo may reasonably deem necessary, customary or desirable to establish, maintain, validate and/or perfect this security interest.

**G.** Guaranty. The payment and performance of Marketer Obligations is also guaranteed by the guaranty of Daniel J. Rodd ("Guarantor") pursuant to that certain Guaranty Agreement by Guarantor in favor of WalCo.

**H.** Term: Termination. This Agreement shall commence on the date hereof and continue until terminated by either Party in accordance with this Section H. This Agreement may be terminated by 30 days' written notice from the terminating Party to the other Party. Termination of this Agreement shall not affect WalCo's rights in the Accepted Accounts or any Marketer Obligations. In addition, if this Agreement is terminated due to a breach by a Party, then the non-breaching Party shall retain all rights with respect to such breach.

**I.** Events of Default.

1. Events of Default. The occurrence of any one or more of the following events shall constitute an event of default hereunder ("Event of Default"): (i) Marketer fails to pay any amount due to WalCo within 30 business days following the date when due, unless otherwise agreed to in writing by the Parties; (ii) any representation, warranty or document made or furnished by Marketer as set forth in the Agreement, or otherwise made in connection with this Agreement, shall be or become untrue; (iii) Marketer fails to comply with any material provision of this Agreement, and such failure is not cured within 45 business days following written notice of such failure by WalCo to Marketer; (iv) Marketer shall make an assignment for the benefit of creditors; (v) any action taken, or omitted to be taken, by any of Affiliate or any of Marketer's equity holders or officers which would, had such action instead been taken by Marketer, constitute a breach of this Agreement or in any way circumvent the

FILED DATE: 12/8/2023 3:51 PM    2023L012436

performance of this Agreement, or (vi) proceedings in bankruptcy or for reorganization of Marketer or for the readjustment of any of its debts under the bankruptcy law, as amended, or under any other act or law, whether state or federal, now or hereafter existing, for the relief of debtors, shall either be commenced involuntarily against Marketer or are filed by Marketer.

2.    Remedies. Upon the occurrence of any Event of Default, WalCo may (i) assess an interest rate of 9% per annum on any amounts due to WalCo by Marketer, which interest shall accrue from the expiration of the grace period as stated within (I)(1) following the date the payment is due until the outstanding amount is received by WalCo; (ii) withhold or offset amounts due to Marketer in accordance to Section C(4); (iii) immediately terminate the Agreement; and/or (iv) seek any other remedy, at law or in equity, to which it is entitled.

**J.**    Indemnification. Marketer shall, at its expense, indemnify, defend and hold harmless WalCo its directors, officers, employees, agents, affiliates and successors, from any claim, action, allegation, damage, loss, judgment, award or costs (including attorneys' fees) as a result of (i) a breach of any representation, warranty, covenant, or obligation under this Agreement by Marketer; (ii) any violation of applicable law by Marketer in connection with the Contracts; (iii) any tortious, fraudulent, unlawful or unauthorized acts or omissions by Marketer.

**K.**    Protection of Confidential Information. Each Party recognizes that the other Party has and will continue to develop certain trade secrets, know-how, records, manuals, correspondence, documents, financial and sales information, reports, customer lists, policies, procedures, proposals, marketing plans, ideas, concepts, services and any other proprietary information which is confidential (collectively "Confidential Information"). Each Party agrees: (a) to hold in trust and maintain confidential; (b) not to disclose to others without prior written approval from the disclosing Party; (c) not to use for any purpose, other than such purpose as may be authorized in writing by the disclosing Party; and (d) to prevent duplication of and disclosure to any other party, any information received from the disclosing Party or developed, presently held or continued to be held, or otherwise obtained by the receiving Party under this Agreement; provided that a Party may disclose such information to its Affiliates and those directors, officers, employees or other authorized agents and representatives (including legal counsel, lenders and investors and prospective lenders and investors) of a Party or its Affiliates to whom disclosure is reasonably necessary. The receiving Party may disclose the disclosing Party's information to the extent necessary to attorneys of litigants or to governmental authorities to comply with any obligation imposed on the receiving Party in connection with a proceeding in a court or other governmental authority of competent jurisdiction, provided that the receiving Party gives reasonably prompt notice to the disclosing Party of the need for such disclosure, together with such other information about the proceeding as will enable the disclosing Party to evaluate the obligation and the need and to elect either to intervene or otherwise appear or act in the proceeding to protect directly the disclosing Party's information at the expense of the disclosing Party. Alternatively, the disclosing Party may request the receiving Party to, and if so requested, the receiving Party shall, make a reasonable and diligent effort at the expense of the disclosing Party to obtain a protective order or otherwise to protect the confidentiality of information sought to be obtained in said proceeding.

The foregoing obligations of confidence, nondisclosure, and nonuse shall not apply to any information that: (a) was in the public domain at the time of disclosure by one Party to the other; (b) enters the public domain through no fault of the disclosing Party; (c) was communicated to one Party by a third party free of any obligation of confidence known to the recipient; or (d) was developed by directors, officers, employees or agents of, or consultants to, one Party independently of, and without reference to, the proprietary information of another Party, and, in the case of the disclosing Party, was not developed while performing under this Agreement.

**L.**    Miscellaneous.

1.    Governing Law/Interpretation. This Agreement shall be construed in conformity with the laws of the State of Illinois without regard to choice of law or conflict of law rules. The Parties hereto irrevocably agree that all actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement, shall be litigated only in courts having situs within Cook County, Illinois. And each Party hereby submits to the personal jurisdiction of such courts.

2.    WAIVER OF JURY TRIAL. MARKETER AND WALCO, AFTER CONSULTING OR HAVING

7

HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE IRREVOCABLY. THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, THE COLLATERAL, OR ANY OTHER AGREEMENT EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT OR COURSE OF DEALING IN WHICH MARKETER AND WALCO ARE ADVERSE PARTIES.

3.      Effect of Change of Law Regulation or Administrative Rule. In the event of any change in any federal, state or other governing law, regulation or administrative rule, the effect of which is reasonably likely to render this Agreement in violation of such law, regulation or administrative rule, or reasonably likely to materially and adversely affect the manner in which either Party may perform or be compensated for its services under this Agreement, the Parties agree to negotiate in good faith to restructure or replace this Agreement with one which complies with any such law, regulation or administrative rule, and which gives the respective Parties economic results as similar as possible to those resulting from this Agreement.

4.      Severability. Whenever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law; but if any provision hereof or the application thereof to any Party or circumstance is prohibited by or invalid under applicable law, such provision shall be effective only to the minimal extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions hereof or the application of such provisions to other Parties or circumstances.

5.      Successors. This Agreement and all of the terms and provisions hereof shall be binding upon and shall inure to the benefit of the Parties, their respective legal representatives, heirs, successors or assigns.

6.      Entire Agreement. This Agreement contains the entire understanding among the Parties and supersedes any prior understandings and/or written or oral agreements among them respecting the within subject matter. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the Parties hereto relating to the subject matter hereof that are not fully expressed herein.

7.      Amendments. This Agreement may be amended or modified only by an agreement in writing signed by the Parties hereto and expressly identified as an amendment or modification

8.      Independent Contractors. The Parties are independent contractors, and nothing in this Agreement will be construed as creating an employer-employee relationship, a partnership, joint venture or other relationship between the Parties. Neither Party has any authority to assume or create obligations or liability of any kind on behalf of the other Party. Marketer shall be responsible for the payment of all taxes due and owing in connection with the relationship created by this Agreement (other than WalCo's income taxes).

9.      Waiver. No assent or waiver, express or implied, to or of any breach of any one or more of the covenants, conditions or provisions hereof shall be deemed to be a waiver of any subsequent breach of the same or any other covenant, condition or provision hereof. No waiver of any provision hereof shall be effective unless made in writing by the waiving Party.

10.     Assignment. This Agreement may not be assigned by Marketer without the prior written consent of WalCo, which consent shall not be unreasonably withheld.

11.     Prevailing Party Costs. The prevailing parties in any litigation in connection with this Agreement shall be entitled to recover from the non-prevailing party all costs and expenses, including, without limitation, reasonable attorneys' and paralegals' fees and costs incurred by such party in connection with any such litigation.

12.     Notices. Any notices, offers, acceptances and other communications required hereunder shall be in writing and deemed to have been given and received (i) when personally delivered, (ii) one day after being sent by

FILED DATE: 12/8/2023 3:51 PM    2023L012436

a nationally recognized overnight courier with guaranteed next day delivery (iii) three days after being mailed by United States certified mail, return receipt requested, postage prepaid, or (iv) when delivered by email with a copy sent by a nationally recognized overnight courier, to the parties at their respective addresses as set forth below.

13.    Construction. This Agreement shall be deemed to have been jointly drafted by the respective Parties, and the rule of construction of contracts that ambiguities are construed against the drafting Party shall not be applied against any Party. Both Parties acknowledge that they have had the opportunity to consult with counsel and negotiate this contract. Whenever the masculine, feminine, neuter, singular, plural, conjunctive or disjunctive terms are used in this Agreement, they shall be deemed to include the others whenever the context so indicates. Headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

14.    Survival of Rights. Except to the extent provided to the contrary in this Agreement, no termination (regardless of cause or procedure) of this Agreement shall in any way affect or impair the power, obligation, duties, rights and liabilities of Marketer or WalCo relating to (i) either Party's obligations under Sections B through F, or (ii) any of the undertakings, agreements, covenants, warranties and representations of Marketer or WalCo with respect to the above. All such undertakings, agreements, covenants, warranties and representations shall survive such termination or cancellation.

15.    Rights of Creditors and Third Parties under the Agreement. This Agreement is entered into between Marketer and WalCo for the exclusive benefit of Marketer and WalCo and their respective successors and permitted assigns and is expressly not intended for the benefit of any other Party. Except and only to the extent provided by applicable law, no other creditor or third party shall have any rights under this Agreement.

16.    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed to be one Agreement. Signatures transmitted by facsimile or other electronic format shall be considered authentic and binding.

17.    Further Assurances. Each Party agrees to do all acts and things and to make, execute and deliver such written instruments, as may from time to time be reasonably required to carry out the terms and provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

**MARKETER:**

NATIONWIDE VEHICLE ASSURANCE CORPORATION

By: _____
Print Name: Daniel Land
Title: Driver

Street Address: 316 main street Box 11
City, State, Zip: Toms River NJ 08753
Attn: Dan
Phone: 848 314-5430
Fax: _____

**WALCO:**

WALCO FUNDING, LLC

By: _____
Print Name: Paul Walder
Title: Chief Executive Officer

Street Address: 440 N. Wells, Suite 410
City, State, Zip: Chicago, IL 60654
Attn: Legal Department
Phone: (800) 718-2342

9

FILED DATE: 12/8/2023 3:51 PM   2023L012436

<u>EXHIBIT A</u>
**PAYMENT TERMS**

| WalCo Fee | | | | |
|---|---|---|---|---|
| **Number of Installments in Payment Plan Agreement** | ≤ 12 | 13-15 | 16-18 | 19-24 |
| **WalCo Fee** | 6.75% | 7.75% | 9.75% | 11.75% |
| **Minimum WalCo Fee** | $180 | $190 | $200 | $250 |

| Earned WalCo Fee | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Number of Payments Made by Purchaser** | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| **Portion of WalCo Fee Earned** | $10 | 20% | 35% | 50% | 65% | 80% | 95% | 100% |

| Advance Rate | | | | |
|---|---|---|---|---|
| **Number of Installments in Payment Plan Agreement** | ≤ 12 | 13-15 | 16-18 | 19-24 |
| **Advance Rate** | 70% | 65% | 55% | 45% |



FILED DATE: 12/8/2023 3:51 PM   2023L012436

# EXHIBIT 3

FILED DATE: 12/8/2023 3:51 PM    2023L012436

## GUARANTY

THIS GUARANTY (this "Guaranty") is dated this 26th day of January, 2021, and made by Daniel J. Rodd, an individual ("Guarantor"), for the benefit of WalCo Funding, LLC, a Delaware limited liability company (along with its successors and assigns, "WalCo").

### WITNESSETH:

WHEREAS, Nationwide Vehicle Assurance Corporation d/b/a Motor Vehicle Assurance, a New Jersey corporation ( "Marketer"), has entered into that certain Marketer Agreement, dated the date hereof (as amended, restated, supplemented or otherwise modified from time to time and in effect, the "Marketer Agreement") with WalCo, pursuant to which WalCo has agreed to provides financing ("Advances") for the purchase price of service contracts or product warranties (the "Contracts") that are sold by Marketer; and

WHEREAS, Guarantor is a, direct or indirect, equityholder, owner, principal or managing member of Marketer, or will otherwise derive financial benefit from the sale of the Contracts and the transactions contemplated by the Marketer Agreement; and

WHEREAS, it is a condition precedent to WalCo's execution of the Marketer Agreement that the Guarantor unconditionally guarantee payment and performance to WalCo of the Obligations (as herein defined), subject to the limitations set forth herein.

NOW, THEREFORE, in consideration of the premises and to induce WalCo to enter into the Marketer Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor agrees as follows:

1.   **Guaranty of Payment.**

(a)    Guarantor hereby unconditionally and irrevocably guaranties to WalCo the full and prompt payment when due, by reason of acceleration or otherwise, and at all times thereafter, of all indebtedness, liabilities and obligations of every kind and nature of Marketer to WalCo, including, but not limited to any and all obligations pursuant to the Marketer Agreement (such indebtedness, obligations and other amounts are hereinafter referred to as the "Obligations"). Guarantor agrees that this Guaranty is a present and continuing guaranty of payment and not of collection, and that WalCo shall not be required to prosecute collection, enforcement or other remedies against Marketer or any other guarantor of the Obligations, or to enforce or resort to any collateral for the repayment of the Obligations or other rights or remedies pertaining thereto, before calling on any Guarantor for payment. Guarantor agrees that if for any reason Marketer shall fail or be unable to pay, punctually and fully, any of the Obligations, the Guarantor shall pay such obligations to WalCo immediately upon demand. The Guarantor agrees that one or more successive actions may be brought against the Guarantor, as often as WalCo deems advisable, until all of the Obligations are irrevocably paid and performed in full.

(b)    The Obligations may be created and continued in any amount, whether or not in excess of such amount, without affecting or impairing Guarantor's liability hereunder, and WalCo may pay (or allow for the payment of) the excess out of any sums received by or available to WalCo on account of the Obligations from Marketer or any other person (except Guarantor), from their properties, out of any collateral security or from any other source, and such payment (or allowance) shall not reduce, affect or impair Guarantor's liability hereunder.

2.   **Representations and Warranties.** To induce WalCo to enter into the Marketer Agreement and make the Advances, Guarantor makes the following representations and warranties to WalCo, each of which shall survive the execution and delivery of this Guaranty:

- 1 -

FILED DATE: 12/8/2023 3:51 PM   2023L012436

(a)     Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any agreement or contract of any kind to which Guarantor is a party.

(b)     There is not any litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending, or to Guarantor's knowledge, threatened that could adversely affect performance by Guarantor of his obligations under this Guaranty.

(c)     This Guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except that the enforceability of this Guaranty may be limited by bankruptcy, insolvency, fraudulent conveyance, fraudulent transfer, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(d)     Neither this Guaranty nor any statement or certification as to facts previously furnished or required herein to be furnished to WalCo by Guarantor, contains any material inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

3.     **Continuing Guaranty.**  Guarantor agrees that the obligations of the Guarantor set forth in this Guaranty shall be primary obligations, shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that Guarantor may have against WalCo, Marketer, any other guarantor of the Obligations or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by, any circumstance or condition (whether or not Guarantor shall have any knowledge thereof), including without limitation:

(a)     Any lack of validity or enforceability of any of the Marketer Agreement or the documents or instruments executed in connection with the Marketer Agreement (collectively, the "Marketer Documents") or any other agreement delivered in connection with any of the Obligations;

(b)     Any termination, amendment, modification or other change in any of the Marketer Documents, including, without limitation, any modification of the interest rate(s) described therein;

(c)     Any furnishing, exchange, substitution or release of any collateral securing repayment of any of the Obligations, or any failure to perfect any lien in such collateral;

(d)     Any failure, omission or delay on the part of Marketer, any other guarantor of the Obligations or WalCo to conform or comply with any term of any of the Marketer Documents or any failure of WalCo to give notice of any Event of Default (as defined in the Marketer Agreement);

(e)     Any waiver, compromise, release, settlement or extension of time of payment or performance or observance of any of the obligations or agreements contained in any of the Marketer Documents;

(f)     Any action or inaction by WalCo under or in respect of any of the Marketer Documents, any failure, lack of diligence, omission or delay on the part of WalCo to enforce, assert or exercise any right, power or remedy conferred on it in any of the Marketer Documents, or any other action or inaction on the part of WalCo;

(g)     Any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar events or proceedings with respect to Marketer or any other guarantor of the Obligations, as applicable, or any of their respective property or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding;

FILED DATE: 12/8/2023 3:51 PM   2023L012436

(h)     Any merger or consolidation of Marketer into or with any entity, or any sale, lease or transfer of any of the assets of Marketer or any other guarantor of the Obligations to any other person or entity;

(i)     Any change in the ownership of Marketer or any change in the relationship between Marketer or any other guarantor of the Obligations, or any termination of any such relationship;

(j)     Any release or discharge by operation of law of Marketer or any other guarantor of the Obligations from any obligation or agreement contained in any of the Marketer Documents; or

(k)     Any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Marketer or any Guarantor.

4.     **Waivers.**

(a)     Guarantor unconditionally waives: (i) notice of any of the matters referred to in Section 3 above; (ii) all notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, to preserve intact any rights against any Guarantor, including, without limitation, any demand, presentment and protest, proof of notice of non-payment under any of the Marketer Documents and notice of any Event of Default or any failure on the part of Marketer, any Guarantor or any other guarantor of the Obligations to perform or comply with any covenant, agreement, term or condition of any of the Marketer Documents; (iii) any right to the enforcement, assertion or exercise against Marketer, any Guarantor or any other guarantor of the Obligations or any right or remedy conferred under any of the Marketer Documents; (iv) any requirement of diligence on the part of WalCo, (v) to the fullest extent permitted by law, any claims based on allegations that WalCo has failed to act in a commercially reasonable manner; (vi) any requirement to exhaust any remedies or to mitigate the damages resulting from any default under any Marketer Document; (vii) to the fullest extent permitted by law, any set-off or counterclaims; (viii) any notice of any sale, transfer or other disposition of any right, title or interest of WalCo under any Marketer Document; (ix) any statute of limitations affecting Guarantor's liability hereunder or the enforcement hereof; (x) all defenses available to guarantors or sureties under applicable law; and (xi) any requirement that WalCo exhaust any right or remedy, or proceed first or at any time, against Marketer or any other guarantor of, or any security for, any of the Obligations.

(b)     When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against Guarantor, WalCo may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against Marketer, any other guarantor or any other Person or against any collateral security or guarantee for the Obligations or any right of offset with respect thereto, and any failure by WalCo to make any such demand, to pursue such other rights or remedies or to collect any payments from Marketer, any other guarantor or any other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of Marketer, any other guarantor or any other Person or any such collateral security, guarantee or right of offset, shall not relieve Guarantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of WalCo, against Guarantor. For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

5.     **Subordination.** Notwithstanding any payments made or obligations performed by Guarantor by reason of this Guaranty (including but not limited to application of funds on account of such payments or obligations), Guarantor agrees that any and all present and future debts and obligations of Marketer to Guarantor hereby are subordinated to the claims of WalCo and hereby are assigned by Guarantor to WalCo as security for the Obligations and Guarantor's obligations under this Guaranty and hereby subordinates to the rights, claims, and interests of WalCo any and all rights it may have at any time (whether arising directly or indirectly, by operation of law, contract or otherwise): (a) to assert any claim against Marketer or any other person, or against any direct or

- 3 -

FILED DATE: 12/8/2023 3:51 PM    2023L012436

indirect security, on account of payments made or obligations performed under or pursuant to this Guaranty, including without limitation, any and all rights of subrogation, reimbursement, exoneration, contribution or indemnity; or (b) to require the marshalling of any assets of Marketer, which right of marshalling might otherwise arise from payments made or obligations performed under or pursuant to this Guaranty, and any and all rights that would result in Guarantor being deemed a "creditor" under the United States Bankruptcy Code of Marketer or any other Person.

6.　　**Subrogation.**　Until the Obligations are irrevocably paid in full and all periods under applicable bankruptcy law for the contest of any payment by the Guarantor or Marketer as a preferential or fraudulent payment have expired, Guarantor knowingly, and with advice of counsel, agrees not to exercise any rights or claims to indemnification, contribution, reimbursement, subrogation or payment which Guarantor may now or hereafter have by and from or against Marketer and the successors and assigns of Marketer, for any payments made by Guarantor to WalCo, including, without limitation, any rights which might allow Marketer, Marketer's successors, a creditor of Marketer, or a trustee in bankruptcy of Marketer to claim in bankruptcy or any other similar proceedings that any payment made by Marketer or Marketer's successors and assigns to WalCo was on behalf of or for the benefit of Guarantor and that such payment is recoverable by Marketer, a creditor or trustee in bankruptcy of Marketer as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from WalCo.

7.　　**Reinstatement.**　The obligations of the Guarantor pursuant to this Guaranty shall continue to be effective or automatically be reinstated, as the case may be, if at any time payment of any of the Obligations or Guarantor's obligations under this Guaranty are rescinded or otherwise must be restored or returned by WalCo upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor or Marketer or otherwise, all as though such payment had not been made.

8.　　**No Waiver of Rights.**　No delay or failure on the part of WalCo to exercise any right, power or privilege under this Guaranty or any of the other Marketer Documents shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege shall preclude any other or further exercise thereof or the exercise of any other power or right, or be deemed to establish a custom or course of dealing or performance between the parties hereto. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law. No notice to or demand on Guarantor in any case shall entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

9.　　**Modification.**　The terms of this Guaranty may be waived, discharged, or terminated only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. No amendment, modification, waiver or other change of any of the terms of this Guaranty shall be effective without the prior written consent of WalCo.

10.　　**Joinder.**　Guarantor agrees that any action to enforce this Guaranty may be brought against Guarantor without any reimbursement or joinder of Marketer or any other guarantor of the Obligations in such action.

11.　　**Severability.**　In the event that any provision of this Guaranty is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, the Guarantor and WalCo shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Guaranty and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

12.　　**No Marshalling.**　Guarantor hereby acknowledges and agrees that WalCo may take action with respect to any collateral pledged to WalCo in connection with the Advances in any fashion, and in any order WalCo,

FILED DATE: 12/8/2023 3:51 PM  2023L012436

in its sole discretion, elects, and that WalCo shall be under no duty to marshal assets or otherwise proceed in any particular fashion (other than as expressly stated herein).

13.     **Enforcement Costs.** If: (a) this Guaranty, is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding; (b) one or more attorneys is retained to represent WalCo in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving Marketer or Guarantor as a debtor; or (c) one or more attorneys is retained to represent WalCo in the collection of any of the Obligations from Marketer or this Guaranty, then the Guarantor shall pay to WalCo upon demand all fees, costs and expenses incurred by WalCo in connection therewith, including, without limitation, reasonable attorney's fees, court costs and filing fees (all of which are referred to herein as "Enforcement Costs"), in addition to all other amounts due hereunder.

14.     **Fraudulent Conveyance Issues and Bankruptcy Issues.**

(a)     Notwithstanding any provision of this Guaranty to the contrary, it is intended that this Guaranty, and any liens and security interests granted by Guarantor to secure this Guaranty (if any), not constitute a Fraudulent Conveyance (as defined below). Consequently, Guarantor agrees that if this Guaranty, or any liens or security interests securing this Guaranty (if any), would, but for the application of this sentence, constitute a Fraudulent Conveyance with respect to Guarantor, this Guaranty and each such lien and security interest (if any) shall be valid and enforceable only to the maximum extent that would not cause this Guaranty to constitute a Fraudulent Conveyance with respect to Guarantor, and this Guaranty and each such lien and security interest (if any) shall automatically be deemed to have been amended accordingly at all relevant times. For purposes hereof, "Fraudulent Conveyance" means a fraudulent conveyance under Section 548 of the United States Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the provisions of any applicable fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time.

(b)     If an Event of Default at any time shall have occurred and be continuing or exists and declaration of default or acceleration under or with respect to any of the Marketer Documents shall at such time be prevented by reason of the pendency against Marketer of a case or proceeding under any bankruptcy or insolvency law, Guarantor agrees that, for purposes of this Guaranty and its obligations hereunder, such Marketer Documents shall be deemed to have been declared in default or accelerated with the same effect as if such Marketer Documents had been declared in default and accelerated in accordance with the terms thereof, and the Guarantor shall forthwith pay the Obligations in full without further notice or demand. So long as any the Obligations shall be owing to WalCo, Guarantor shall not, without the prior written consent of WalCo, commence or join with any other party in commencing any bankruptcy, reorganization or insolvency proceedings of or against Marketer or any other guarantor. Guarantor hereby assigns to WalCo, Guarantor's right to receive any payments from any trustee in bankruptcy, receiver, debtor in possession, assignee for the benefit of creditors or similar Person by way of dividend, adequate protection payment or otherwise.

15.     **Notices.** Any notices, communications and waivers under this Guaranty shall be in writing and shall be: (a) delivered in person; (b) mailed, postage prepaid, either by registered or certified mail, return receipt requested; or (c) by overnight express carrier, addressed in each case as follows:

| | |
|---|---|
| To WalCo: | WalCo Funding, LLC<br>440 N. Wells St., Ste. 410<br>Chicago, Illinois 60654<br>Attn: Paul M. Walder |
| To the Guarantor: | As set forth on the signature pages |

- 5 -

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received: (a) if personally delivered, then on the date of delivery; (b) if sent by overnight, express carrier, then on the next business day immediately following the day sent; or (c) if sent by registered or certified mail, then on the earlier of the third business day following the day sent or when actually received.

16. **Governing Law.** This Guaranty shall be a contract made under and governed by the internal laws of the State of Illinois applicable to contracts made and to be performed entirely within such State.

17. **Successors and Assigns.** This Guaranty shall be binding upon Guarantor and his successors, heirs, administrators and assigns, and shall inure to the benefit of WalCo and the successors and assigns of WalCo.

18. **Counterparts.** This Guaranty may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall together constitute but one and the Guaranty. A signed copy of this Guaranty delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Guaranty.

19. **Section Captions and Headings.** Section captions and headings used in this Guaranty are for convenience only and are not part of and shall not affect the construction of this Guaranty.

20. **WAIVER OF JURY TRIAL.** WalCo AND THE GUARANTOR, AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE IRREVOCABLY, THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS, THE COLLATERAL, OR ANY OTHER AGREEMENT EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONJUNCTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT OR COURSE OF DEALING IN WHICH WalCo AND GUARANTOR ARE ADVERSE PARTIES. THIS PROVISION IS A MATERIAL INDUCEMENT FOR WalCo GRANTING ANY FINANCIAL ACCOMMODATION TO DEALER AND ACCEPTANCE OF THIS GUARANTY.

21. **CONSENT TO JURISDICTION.** GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY UNITED STATES FEDERAL OR ILLINOIS STATE COURT SITTING IN CHICAGO, ILLINOIS IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY, ANY OTHER AGREEMENT WITH WalCo OR THE COLLATERAL AND GUARANTOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH COURT AND IRREVOCABLY WAIVE ANY OBJECTION THEY OR IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM. NOTHING HEREIN SHALL LIMIT THE RIGHT OF WalCo TO BRING PROCEEDINGS AGAINST GUARANTOR IN THE COURTS OF ANY OTHER JURISDICTION. ANY JUDICIAL PROCEEDING BY GUARANTOR AGAINST WalCo OR ANY AFFILIATE OF WalCo INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS GUARANTY ANY OTHER AGREEMENT WITH WalCo OR THE COLLATERAL SHALL BE BROUGHT ONLY IN A COURT IN CHICAGO, ILLINOIS. THE GUARANTOR HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO GUARANTOR AS SET FORTH HEREIN IN THE MANNER PROVIDED BY APPLICABLE STATUTE, LAW, RULE OF COURT OR OTHERWISE.

FILED DATE: 12/8/2023 3:51 PM  2023L012436

- 6 -

22.     **CONFESSION OF JUDGMENT**. GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST GUARANTOR FOR THE UNPAID PORTION OF ANY LIABILITIES AS EVIDENCED BY AN AFFIDAVIT SIGNED BY WalCo SETTING FORTH THE AMOUNT THEN DUE, ATTORNEYS' FEES PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. IF THE PHOTOCOPY OF THIS GUARANTY, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL. GUARANTOR HEREBY WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT.  NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS WalCo MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS GUARANTY HAVE BEEN PAID IN FULL. GUARANTOR HEREBY WAIVES AND RELEASES ANY AND ALL CLAIMS OR CAUSES OF ACTION WHICH GUARANTOR MIGHT HAVE AGAINST ANY ATTORNEY ACTING UNDER THE TERMS OF AUTHORITY WHICH WalCo HAS GRANTED HEREIN ARISING OUT OF OR CONNECTED WITH THE CONFESSION OF JUDGMENT HEREUNDER.

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date first above written.

GUARANTOR:

By: _____

Print Name: Daniel Pert

Street Address: 59 N. Island Road

City, State, Zip: Craigville NT 06?31

FILED DATE: 12/8/2023 3:51 PM    2023L012436

- 7 -

FILED DATE: 12/8/2023 3:51 PM   2023L012436

# EXHIBIT 4



FILED DATE: 12/8/2023 3:51 PM   2023L012436

April 24, 2023

***Via email to:drodd@mvawarranty.com***
***Via FedEx to:***
Motor Vehicle Assurance
26 Main Street, Suite 101
Toms River, NJ 08753
Attn: Dan Rodd

       **Re:**    **Demand for Payment under the Marketer Agreement.**

Dear Mr. Rodd:

      WalCo Funding, LLC, a Delaware limited liability company ("WalCo"), Nationwide Vehicle Assurance Corporation d/b/a Motor Vehicle Assurance, a New Jersey corporation ("Marketer"), and Daniel Rodd (the "Guarantor"), previously entered into (i) with respect to WalCo and Marketer, that certain Marketer Agreement, dated January 26, 2021 (the "Marketer Agreement"), and (ii) with respect to the Guarantor, that certain Guaranty Agreement, dated January 26, 2021 ("Guaranty," and together with the Marketer Agreement, the "Funding Documents"). Capitalized terms used herein shall have the meanings ascribed to them in the Marketer Agreement, unless otherwise herein stated.

      Marketer has failed to pay Marketer Refunds due to WalCo in accordance with the Marketer Agreement, which amounts as of the date of this letter equal approximately $1,114,997.43, with further amounts continuing to accrue. Over the past several months, WalCo has sent numerous emails with invoices of amounts due to Marketer. In accordance with Section I of the Marketer Agreement, Marketer's failure to pay amounts due within 30 business days of when due constitutes an Event of Default under the Marketer Agreement. Pursuant to the Remedies Section of the Marketer Agreement, upon the occurrence of an Event of Default, all amounts owed to WalCo thereunder shall be due and payable to WalCo immediately. In addition, the amounts owed shall accrue a default rate of interest equal to 9.0% per annum, which interest shall be immediately due and payable.

      Please note that, under the Guaranty, the Guarantor has unconditionally and irrevocably guaranteed the payment of any and all amounts due under the Marketer Agreement. The Guarantor has further agreed thereunder that Guarantor shall pay any amounts owned by Marketer under the Marketer Agreement immediately upon demand, and that WalCo shall not be required to prosecute collections against the Marketer or any other person prior to seeking payment from the Guarantor.

      Unless Marketer timely cures the above-mentioned material breach and pays to WalCo all outstanding amounts due, WalCo will take legal action against Marketer and Guarantor to recover damages and any other legal or equitable remedies available to WalCo. WalCo hereby demands that no later than May 10, 2023 Marketer and/or Guarantor pay to WalCo an amount equal to $10,000 as a good faith payment and propose a repayment schedule to WalCo ("Cure Option"). If Marketer and/or Guarantor have not contacted WalCo and paid to WalCo the $10,000 by such deadline, the Cure Option shall be terminated and rescinded in its entirety. The full and prompt payment by Marketer and Guarantors of the full amounts due

FILED DATE: 12/8/2023 3:51 PM   2023L012436

Demand Letter
Motor Vehicle Assurance
April 24, 2023
Page 2

pursuant to the Marketer Agreement shall thereupon become due and owing and WalCo will pursue all remedities it may have at law or in equity.

WalCo hereby reserves all of its rights and remedies under each of the Funding Documents. Any non-exercise of or delay in exercising any of WalCo's rights and remedies on the date hereof or at any time hereafter shall not be deemed a waiver of any such rights and remedies.

Any discussions or correspondence between WalCo, the Marketer and/or the Guarantor regarding Funding Documents that have previously occurred or that may occur hereafter shall not (i) cause a modification of the Funding Documents, (ii) be construed or have the effect of curing, excusing, waiving, relinquishing, releasing or postponing any of the existing defaults under the Funding Documents, (iii) establish a custom or course of dealing, or (iv) waive, limit or condition the rights and remedies of WalCo under the Funding Documents, at law or in equity, all of which are hereby expressly reserved.

Regards,

*Martha Choromanska*

Senior Vice President/Legal Counsel
Walco Funding, LLC

CC:   DriveSmart
      310 Main Street, Suite 7-8
      Toms River, NJ 08753
      Attn: Daniel Rodd

FILED DATE: 12/8/2023 3:51 PM   2023L012436

# EXHIBIT 5



FILED DATE: 12/8/2023 3:51 PM   2023L012436

July 31, 2023

***Via email to:drodd@mydrivesmart.com***
***Via FedEx to:***
DriveSmart Auto Care, Inc.
310 Main Street, Suite 7-8
Toms River, NJ 08753
Attn: Daniel Rodd

Re:   **Demand for Payment under the Administrator Agreement.**

Dear Mr. Rodd:

As you are aware, WalCo Funding, LLC, a Delaware limited liability company ("WalCo"), and Drivesmart Auto Care, Inc., a New Jersey corporation ("Administrator"), previously entered into that certain Administrator Agreement, dated June 16, 2021. Capitalized terms used herein shall have the meanings ascribed to them in the Administrator Agreement, unless otherwise herein stated. Pursuant to Section C(6) of the Administrator Agreement, Administrator guaranteed the payment of Marketer Refunds due to Walco. As such, we hereby demand payment of the $1,114,997.43 that is currently due to WalCo by Nationwide Vehicle Assurance Corporation d/b/a Motor Vehicle Assurance ("MVA") in accordance with that certain Marketer Agreement, dated January 26, 2021 (the, "Marketer Agreement").

Over the past several months, WalCo has sent numerous emails with invoices of amounts due by MVA. Despite WalCo's diligent efforts and repeated commnications, MVA failed to remit payment and abide by its obligations under the Marketer Agreement. Following MVA's breach of the Marketer Agreement, WalCo contacted Drivesmart in accordance with Sections C(6) and E of the Administrator Agreement and provided to Administratator an invoice of amounts due. As of the date of this letter, more than 30 business days have elapsed since payment of the Marketer Refunds was due from Drivesmart constituting an Event of Default under Section H of the Administrator Agreement.

WalCo hereby demands immediate payment of $1,114,997.43. Unless payment is received by WalCo within 7 business days from the date of this letter, WalCo will have no choice but to pursue all remedities it may have at law or in equity.

WalCo hereby reserves all of its rights and remedies under each of the Administrator Agreement. Any non-exercise of or delay in exercising any of WalCo's rights and remedies on the date hereof or at any time hereafter shall not be deemed a waiver of any such rights and remedies. Any discussions or correspondence between WalCo, and the Administrator that have previously

Demand Letter
Drivesmart Auto Care, Inc.
July 31, 2023
Page 2

occurred or that may occur hereafter shall not (i) cause a modification of the Administrator Agreement, (ii) be construed or have the effect of curing, excusing, waiving, relinquishing, releasing or postponing any of the existing defaults under the Administrator Agreement, (iii) establish a custom or course of dealing, or (iv) waive, limit or condition the rights and remedies of WalCo under the Administrator Agreement, at law or in equity, all of which are hereby expressly reserved.

Regards,

*Martha Choromanska*

Senior Vice President/Legal Counsel
Walco Funding, LLC

CC:     Josh Panecki, COO
        jpanecki@mydrivesmart.com